James Andrew TAYLOR *v.* STATE of Arkansas

CA CR 01-215                                   75 S.W.3d 708

Court of Appeals of Arkansas
Division III
Opinion delivered May 8, 2002

*James Law Firm*, by: *Clay T. Buchanan*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. James Andrew Taylor challenges his conviction for possession of drug paraphernalia with intent to manufacture methamphetamine. He contends on appeal that the trial court erroneously denied his motion for continuance in order to obtain substitute counsel. The State concedes error and requests that appellant's conviction be reversed because the record does not reflect that appellant knowingly and intelligently waived his right to counsel at trial. We agree and reverse and remand for a new trial.

### Facts and Procedural History

On September 8, 1999, Officer Dan Morales of the Arkansas State Highway Police observed appellant driving a vehicle with defective windshield wipers. After the officer pulled appellant over, appellant agreed that the wipers were defective and told Morales that he had borrowed the car from a friend.

After conversing with appellant, Morales became suspicious and requested appellant's permission to search the vehicle. Appellant consented. When Officer Morales asked appellant to open the trunk, the passenger in the vehicle immediately responded, "there's nothing in the trunk." Appellant proceeded to open the trunk, and Morales discovered several items of drug paraphernalia. Appellant was charged with possession of drug paraphernalia with intent to manufacture methamphetamine.

On November 1, 1999, appellant appeared before a trial judge and was found indigent. The court appointed a public defender, Scott Freydl, to represent appellant at trial, which was scheduled for February 14, 2000. Although appellant met with

Freydl to discuss his case, Freydl left the Public Defender's Office and the court appointed David Mark Gunter to represent appellant. Between November 1, 1999, and February 14, 2000, appellant appeared before the trial court once for a pretrial hearing on discovery motions.

In a hearing conducted on the day of jury selection, appellant informed the court that he no longer wanted Gunter to represent him. When the court inquired further, appellant told the court that he had been incarcerated for five months, that he had received his tax returns, and that he now had the money to hire a lawyer. Appellant stated that he had not had the opportunity to go over the case file with an attorney and that he was requesting a continuance to hire a lawyer. He informed the court that if it granted the motion, "we could take care of this matter at the next court date." The following colloquy took place:

> THE COURT: I am not going to continue this matter. You were in here on the 10th and I told you the trial date would remain the same. We will proceed to trial with either you representing yourself or Mr. Gunter representing you. The jury will be selected today and the trial will be conducted — (to Mr. Wright, Prosecuting Attorney) do you have the witnesses subpoenaed for tomorrow?
>
> MR. WRIGHT: For tomorrow.
>
> THE COURT: The trial will be conducted tomorrow. Do you desire [that] Mr. Gunter continue to represent you at this time?
>
> APPELLANT: No, sir, I still beg for the mercy of the court to let me have the opportunity to hire an attorney. I've got the means and I've been in contact with my father in Colorado. He says that he will help me in any way.
>
> THE COURT: You appeared in court last week on the 10th?
>
> APPELLANT: Yes, sir. I wanted to ask for a continuance at that time but I was just rushed in and rushed right back out.

THE COURT: I am going to deny your motion for continuance. Do you understand that you have a right to have Mr. Gunter represent you?

APPELLANT: No, sir, I do not wish that.

THE COURT: Do you wish to represent yourself?

APPELLANT: At this time, no, sir. I wish to obtain a paid lawyer.

THE COURT: If you can obtain a lawyer by the time we start the jury trial, you may do so. The trial is going [to] continue. Do you understand that?

APPELLANT: I understand that you're denying me — that I cannot obtain a lawyer at this time.

THE COURT: No. You have a lawyer. Mr. Gunter is a competent lawyer.

APPELLANT: Yes, sir, but he has not come down and went over [sic] this case file with me and I need some of this evidence suppressed. There are some allegations here that are not true and I am asking for a chance to go over this with a lawyer. The first time I saw Mr. Gunter, he didn't even have this case file with him.

THE COURT: At this time, you understand — do you desire Mr. Gunter to continue to assist you at this time?

APPELLANT: No, sir. At this time, I do not because I have the means to afford a lawyer.

THE COURT: We are going to select the jury in a few minutes for trial tomorrow. Understand that?

APPELLANT: I understand.

THE COURT: I am going to require that Mr. Gunter, although not representing [appellant], advise him should he have any legal or procedural questions. You understand that?

APPELLANT: Yes, Your Honor.

THE COURT:   For the record, [appellant] has been in jail since September of — and the charges — since November 1, 1999. This matter has been set for trial today and the Public Defender's Office has been appointed, I believe at the first appearance, at that time. I'm going to take about a five minute recess at this time and we will come back to select the jury.

Following deliberations, the jury found appellant guilty of possession of drug paraphernalia with intent to manufacture methamphetamine. It sentenced him to ten years' imprisonment and fined him $5,000. This appeal followed.

### Appellant's Right to Counsel

For his sole point on appeal, appellant asserts that the trial court erroneously denied his motion for continuance in order to obtain substitute counsel. As support for his argument, appellant contends that he never waived his right to counsel, and that the trial court failed (1) to inquire of his understanding of the procedure and charges against him, and (2) to warn him of the danger of proceeding *pro se*. Thus, appellant reasons that the record does not support a conclusion that he knowingly and intelligently waived his right to counsel. The State concedes that the record fails to demonstrate that appellant knowingly and intelligently waived his right to counsel. We agree.

Recently, in *Hatfield v. State*, 346 Ark. 319, 57 S.W.3d 696 (2001), our supreme court addressed the issue of whether an appellant knowingly and intelligently waived his right to counsel by stating as follows:

> [T]his court has long recognized the crucial aspect of informing an accused of his right to represent himself, along with the attendant risks. Furthermore, our court has held that the trial court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. Every reasonable presumption must be indulged against the wavier of fundamental constitutional rights, and the burden is upon the State to show that an accused voluntarily and intelli-

gently waived his fundamental right to the assistance of counsel. Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused.

A criminal defendant may invoke his right to defend himself *pro se* provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. The "constitutional minimum" for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forego the aid of counsel.

*Id.* at 325–26, 57 S.W.3d at 700–01 (citations omitted).

■ The assistance of standby counsel may rise to a level sufficient for our court to moot an assertion of involuntary waiver of right to counsel based on our determination that the appellant had counsel for his defense. *See Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999). Whether the assistance rises to this level is a question that is answered by looking at the totality of the circumstances. *See id.* To moot an assertion of involuntary waiver, the assistance must be substantial, such that standby counsel was effectively conducting the defense. *See id.*

After applying the guidelines governing knowing and intelligent waiver to the facts and circumstances in *Hatfield, supra*, the *Hatfield* court determined that the trial judge failed to adequately advise Hatfield of the consequences of proceeding *pro se*. The court noted that the trial judge erred by failing to make even a limited inquiry into Hatfield's understanding of the legal process, although the judge allowed standby counsel to remain in the case. However, the court held that deficiencies in the judge's inquiry were rendered moot because standby counsel actively participated

throughout the trial such that Hatfield waived his right to proceed *pro se.  See Hatfield v. State, supra.*

In *Bledsoe, supra,* our supreme court determined that there was no evidence of an inquiry by the trial court into Bledsoe's waiver of the right to counsel, and that Bledsoe's appointed standby counsel did not actively participate in his defense. Because Bledsoe was left to represent himself, and because Bledsoe's appointed counsel did not actively represent him, the court determined that Bledsoe was denied his right to counsel.  *See Bledsoe v. State, supra.*

■ The record in the present case demonstrates that the trial court made no inquiry as to whether appellant understood the risk or danger in representing himself.  Instead, the record contains ample support for appellant's contention that he did not waive his right to counsel.  Appellant told the court that he did not wish for Gunter to represent him, and that he did not wish to represent himself.  He repeatedly asked the court for permission to obtain a "paid lawyer," because he "had the means to do so." When the court told appellant that he already had a lawyer (Gunter), appellant expressed dissatisfaction with Gunter's services.  He told the court that Gunter had visited him once and on that occasion Gunter did not have the case file with him.  Appellant also advised the court that although he wanted certain items suppressed, Gunter failed to file a motion to suppress evidence. We note that Gunter did not dispute appellant's assertions or claim that he was ready for trial.  Based on our review of the record, we hold that the trial court's failure to inquire as to appellant's understanding of the legal process, or to warn appellant about the possible consequences and disadvantages of representing himself constitutes reversible error.

■ In rendering our decision, we note that the trial court's denial of appellant's request for counsel cannot be justified based on appellant's belated request for a continuance on the day of trial. As observed by the State, the record fails to reveal that appellant had previously requested any continuances.  Indeed, appellant was incarcerated pending trial and told the court that he had received his tax returns and had the money to hire a lawyer.  Appellant also

told the court that if the motion was granted, he would "take care of this matter at the next court date." The record unequivocally supports a conclusion that appellant's request for a continuance in order to obtain counsel was not an attempt to delay the trial or to obstruct the criminal justice system.

■ Moreover, the record does not support a conclusion that appellant's involuntary waiver of counsel was rendered moot because of the assistance of standby counsel. Instead, the record demonstrates that during jury selection and throughout the trial, appellant actively represented himself by questioning potential jurors, making opening and closing arguments, cross examining a witness, and raising a relevance objection, which was overruled, to a videotape that the State sought to introduce into evidence. On the other hand, the record indicates that Gunter's role throughout the proceeding was minimal. Gunter advised appellant on the number of jury strikes, informed the court that appellant did not wish to testify in his own defense, and reviewed prospective jury instructions. Gunter raised no objections to evidence or exhibits, and did not cross-examine any witnesses. Viewing the totality of the circumstances, we conclude that Gunter's level of participation did not rise to the level such as to moot appellant's involuntary waiver.

■ We hold that appellant was denied his right to counsel, and we reverse his conviction and remand for a new trial. Because of our conclusion that appellant did not knowingly and intelligently waive his right to counsel, there is no need to address appellant's contention that the trial court erroneously denied his motion for a continuance, as this issue is not likely to arise again on remand.

Reversed and remanded.

VAUGHT and BAKER, JJ., agree.